1999 SD 20

**Debra JENNER, Applicant and Appellant,**

v.

**Robert DOOLEY, Warden, Springfield State Prison, Appellee.**

No. 20428.

Supreme Court of South Dakota.

Argued Sept. 16, 1998.

Decided Feb. 10, 1999.

See also, 451 N.W.2d 710.

464

David M. Hosmer, Yankton, South Dakota, for appellant.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, South Dakota, for appellee.

KONENKAMP, J.

[¶ 1.] Without an evidentiary hearing, the circuit court dismissed the habeas corpus applicant's claims for undue delay in filing and for failure to state a claim upon which relief can be granted. We conclude the court erred in dismissing the application as untimely, but we affirm the dismissal because the

application nonetheless failed to state a legally sufficient claim for relief.

## Facts

[¶ 2.] Three-year-old Abby Lynn Jenner was found stabbed to death in her home in Huron, South Dakota, on the morning of April 5, 1987. With no evidence of forced entry, law enforcement officers deduced that the killer had to have come from inside the home. All the doors and windows were locked and intact. The only persons in the house at the time of the murder were Abby's parents, Lynn and Debra Jenner, and their other child, five-year-old Stuart.

[¶ 3.] In the course of their investigation, officers separately interviewed both Lynn and Debra. Several times Debra implicated herself in her child's death. Although she claimed she could not remember doing it, she said she may have "psyched out" and killed Abby. In an altered voice, she narrated the murder as though Abby were relating it, giving a description of the weapons Abby saw—a Chicago Cutlery knife and a black model airplane. Investigators found a Chicago Cutlery knife and a black model airplane in the home. The slash wounds corresponded with the shape of the knife and the model airplane seemed to reflect a unique wound found on Abby's body. Strands of head hair were found in Abby's hand. In Debra's narration she told investigators the perpetrator's hair was long enough to hang into Abby's bed and Abby grabbed the hair. When asked if she had been the person standing over Abby, Debra replied, "I think so." After the interviews, when she was reunited with her husband, Debra cried out, "I did it, I did it. Did you help me?" Lynn answered that he had not.

[¶ 4.] Debra Jenner was charged with the murder. At her trial, the State presented the testimony of Dr. Brad Randall, the forensic pathologist who had performed the autopsy of Abby's body. Dr. Randall testified that Abby was wounded over seventy times in a "frenzy type" attack. He suggested that two weapons were used to kill Abby, and he concluded that one of the weapons could have been the black model airplane described by Debra and found in the Jenner home. He described some of the wounds as slashes, consistent with injuries inflicted by an object sharpened on one side and dull on the other. Other punctures and scrapes were indicative of an injury caused by a blunt edged instrument. The autopsy also revealed a puncture wound, characterized by Dr. Randall as "relatively unique," which reflected the physical shape of the model airplane. His testimony about the width of the knife used to inflict Abby's fatal injuries, however, was not altogether consistent. In his appearance before the grand jury, he estimated the width to be three-fourths of an inch. At trial, he changed his opinion to conclude that the knife was three-eighths of an inch to one-half inch wide. Debra's trial counsel called no expert to refute Dr. Randall's testimony.

[¶ 5.] Abby's wound pattern indicated that she may have attempted to ward off some of the blows during the attack. Hair found on her arms and in her left hand, and Abby's own hair and blood samples were preserved during the autopsy. Rex Riis, a criminologist with the South Dakota Forensic Laboratory, microscopically examined these samples, but they were not analyzed using DNA typing. In comparing known hair samples from Lynn, Debra, and Abby with the hair found on Abby, Riis concluded that the hair on Abby's arms and in her left hand could either be head hairs from Debra or Abby, but not Lynn.

[¶ 6.] Upon the jury's verdict of guilty of second degree murder and Debra's sentence of life imprisonment, the court signed and filed its judgment on March 25, 1988. We affirmed her conviction on February 14, 1990. *See State v. Jenner*, 451 N.W.2d 710 (S.D. 1990). She then sought habeas relief in the United States District Court of South Dakota, which was denied on September 26, 1991. The Eighth Circuit Court of Appeals affirmed. *Jenner v. Smith*, 982 F.2d 329 (8th Cir.1993), *cert. denied*, 510 U.S. 822, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993). On January 25, 1996, Debra filed an application for writ of habeas corpus, a motion for discovery, and an affidavit in support of motion for discovery in Beadle County Circuit Court. Her allegations included claimed violations of the United States Constitution and the South Dakota Constitution, based on the failure to

perform DNA testing on the hair samples and ineffective assistance of counsel for failure to call an expert to contradict the testimony of Dr. Randall. This initial application came seven years, ten months after Debra's original conviction, and five years, eleven months after her conviction was affirmed by this Court.

[¶ 7.] Debra's attorney amended her petition on August 11, 1996, asserting seven grounds for relief. She maintained that her trial attorneys were ineffective because they (1) failed to interview Dr. Randall and Mr. Riis before trial to prepare for cross-examination, and (2) failed to obtain experts to counter the testimony of Dr. Randall and Mr. Riis. She also alleged that (3) the State committed prosecutorial misconduct by arguing the absence of a third party perpetrator when she was precluded from offering any evidence on that theory, (4) the trial court improperly allowed the jurors to visit the crime scene, (5) the State failed to disclose exculpatory evidence after her conviction, (6) the hair and blood samples taken by the investigating officers were never subjected to DNA analysis, and (7) the State violated her rights by incarcerating an innocent person. Both in her habeas application and by separate motion Debra asked for the release of the hair and blood exhibits for DNA testing. The court denied the request because there was no reasonable probability that the result of the testing would be exculpatory.

[¶ 8.] The State moved to dismiss the amended application in its entirety as (1) untimely pursuant to SDCL 21–27–3.2 and (2) for failure to state a claim upon which relief can be granted under SDCL 15–6–12(b)(5). Debra submitted two memorandums responding to the State's motions to dismiss. In these documents, she only claimed that her trial counsel's performance was ineffective for failing to call an expert to refute the testimony of Dr. Randall. She did not dispute the trial testimony of Rex Riis. Furthermore, during a telephonic hearing Debra's attorney agreed the allegation that trial counsel was ineffective for failing to suitably prepare for cross-examination of Dr. Randall and Mr. Riis could be dismissed.

[¶ 9.] On February 20, 1998, the circuit court dismissed the amended petition as untimely under § 21–27–3.2, but left for determination Debra's allegations that the State failed to disclose exculpatory evidence and failed to test the hair samples using DNA analysis. Without receiving any evidence, the court concluded as a matter of law that the State was prejudiced in its ability to respond to the application because the memories of witnesses had faded, and Debra had failed to overcome this presumption. *See* SDCL 21–27–3.2. As another ground for dismissal, the court held that the allegations in the petition failed to state a claim pursuant to § 12(b)(5), except Debra's assertion of impropriety in allowing the jury to visit the crime scene. The court reasoned that (1) Debra's ineffective assistance of counsel claims were insufficient as a matter of law because her trial counsel's performance was not deficient and, moreover, no claimed deficiency prejudiced the outcome. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).(2) Debra failed to identify any opinion of Rex Riis that could have been rebutted had trial counsel called a counterexpert. (3) As for Dr. Randall's trial testimony, the court concluded as a matter of law that failing to call an expert to refute his opinion concerning the unique puncture wound was not prejudicial because the outcome of Debra's trial would not have been different. (4) Debra's other claims were deemed waived because they had not been raised on direct appeal. Lastly, the court granted the State's request for a more definite statement on the allegation that the jury's view of the crime scene was improper.

[¶ 10.] Debra now appeals the dismissal of her amended application for habeas corpus, raising the following issues: (1) Did the habeas court err when it held that Debra's writ should be dismissed under § 21–27–3.2? (2) Did the habeas court err when it dismissed Debra's claim of ineffective assistance of counsel because trial counsel failed to counter the testimony of Dr. Randall? (3) Did the habeas court err when it dismissed Debra's request for post-conviction discovery because she failed to make a showing that

exculpatory ·evidence would be discovered through DNA testing? (4) Did the habeas court err when it dismissed Debra's claim that the State committed prosecutorial misconduct?[1] (5) Did the habeas court err when it found that § 21–27–3.2 was constitutional?[2]

## Standard of Review

▇▇▇ [¶ 11.] A habeas corpus applicant has the initial burden of proof to establish a colorable claim for relief. *Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938). " 'Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.' " *Lodermeier v. Class,* 1996 SD 134, ¶ 3, 555 N.W.2d 618, 622 (other citations omitted) (quoting *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191 (citations omitted)). Although we ordinarily review a habeas court's fact findings under the clearly erroneous standard, *Flute v. Class,* 1997 SD 10, ¶ 8, 559 N.W.2d 554, 556 (citation omitted), here the circuit court received no evidence, but granted the State's motions to dismiss as a matter of law. Thus our review in this instance is de novo and we give no deference to the court's legal conclusions.

## Analysis and Decision

### 1. Dismissal under SDCL 21–27–3.2

▇▇ [¶ 12.] South Dakota law allows for dismissal of belated habeas corpus applications. SDCL 21–27–3.2 provides:

An application under this chapter may be dismissed if it appears that the state or the applicant's custodian has been prejudiced in its ability to respond to the application by delay in its filing, unless the applicant shows that the application is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances causing the prejudice occurred. It

shall be presumed that the state or the applicant's custodian has been prejudiced if the application is filed more than five years after signing, attestation and filing of the judgment or order under which the applicant is held. This presumption is rebuttable pursuant to § 19–11–1.

SDCL 19–11–1 provides:

In all civil actions and proceedings, unless otherwise provided for . . ., a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. *When substantial, credible evidence has been introduced to rebut the presumption, it shall disappear from the action or proceeding . . . .*

(emphasis added). Despite the presumption of prejudice which applies after the five year period pursuant to § 21–27–3.2, a habeas petitioner under § 19–11–1 may rebut the presumption by presenting "substantial, credible evidence." Here, the habeas court concluded that the presumption applied. The court then went on to decide, as a matter of law, that Debra failed to overcome the presumption because the "memories of the individuals involved in Debra's underlying conviction have faded, thereby prejudicing Respondent in his ability to respond to Debra's habeas corpus claims." How the court could know whether the memories of witnesses had faded is unknown, and neither appellate counsel suggest an answer. Debra should have been afforded an opportunity to rebut the presumption. SDCL 21–27–3.2; SDCL 19–11–1. Deciding whether a habeas applicant's delay in filing manifests a lack of diligence and whether the State has been prejudiced are acutely fact intensive questions. A habeas court must give an applicant reasonable opportunity to present evidence on these issues. If the court's decision had stopped at this

---

1. We will not entertain in a collateral proceeding legal issues that should have been raised on direct appeal.

2. As we conclude that the case was properly dismissed on an alternative ground, we need not reach this issue.

point we would be compelled to remand. However, the habeas court also dismissed the application on its merits, holding essentially that assuming as true the pleaded allegations, the application nonetheless failed as a matter of law.

## 2. Dismissal Under SDCL 15–6–12(b)(5)

[¶ 13.] As habeas proceedings are civil in nature, the rules of civil procedure apply to the extent they are not inconsistent with SDCL chapter 21–27. SDCL 15–6–81(a). Motions to dismiss, therefore, are appropriate to dispose of nonmeritorious applications. A court may dismiss a habeas corpus petition for failure to state a claim under SDCL 15–6–12(b)(5) only if it appears beyond doubt that the petition sets forth no facts to support a claim for relief. *See Schlosser v. Norwest Bank South Dakota,* 506 N.W.2d 416, 418 (S.D.1993). Fact allegations must be viewed in a light most favorable to the petitioner. *Stumes v. Bloomberg,* 1996 SD 93, ¶ 6, 551 N.W.2d 590, 592 (citations omitted); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1363, at 656 (1969). A motion to dismiss under § 12(b)(5) challenges the legal sufficiency of the petition. *Stumes,* 1996 SD 93, ¶ 6, 551 N.W.2d at 592 (citation omitted); *see also Thompson v. Summers,* 1997 SD 103, ¶ 5, 567 N.W.2d 387, 390 (citations omitted). As the United States Supreme Court noted, when a court

> reviews the sufficiency of a complaint, before the reception of any evidence ... its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. Motions to dismiss in civil actions are generally disfavored, *Thompson,* 1997 SD 103, ¶ 5, 567 N.W.2d at 390, but a habeas petition may be more susceptible to dismissal because the remedy it seeks is limited, being in the nature of a collateral attack on a final judgment. *Lien v. Class,* 1998 SD 7, ¶ 10, 574 N.W.2d 601, 606 (citing *Black v. Class,* 1997

SD 22, 560 N.W.2d 544). To survive a motion to dismiss under § 12(b)(5), an application for habeas corpus must pass a minimum "threshold of plausibility." *Cf. Dellenbach v. Hanks,* 76 F.3d 820, 822–23 (7th Cir.1996) (applying this standard under federal habeas corpus). If an applicant's allegations are unspecific, conclusory, or speculative, the court may rightfully entertain a motion to dismiss. *See* SDCL 21–27–5 (writ may be denied if it appears from the application itself that no relief can be granted). Also, if pleadings fail to allege a requisite element necessary to obtain relief, dismissal is in order. *See* 2A J. Moore, Moore's Federal Practice ¶ 12.07[2.–5], at 12–68 & n. 19 (2d ed 1987).

[¶ 14.] Under § 12(b)(5), whether an applicant fails to state a claim upon which relief can be granted must be ascertained from the face of the application. Once a court considers matters outside the application, the § 12(b)(5) motion to dismiss converts into a motion for summary judgment. When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in § 15–6–56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by § 15–6–56." SDCL 15–6–12(b)(5). We have held that consideration of matters beyond the pleadings under Rule 12 triggers the notice provision of Rule 56(c). *Eide v. E.I. Du Pont De Nemours & Co.,* 1996 SD 11, ¶ 5, 542 N.W.2d 769, 770. Failure to convert and provide litigants with reasonable notice to permit addition to the record can constitute reversible error. *Id.; see, e.g., Carter v. Stanton,* 405 U.S. 669, 671–72, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972). Nonetheless, despite consideration of matters outside the pleadings, a court's error in failing to convert the motion and to comply with Rule 56 is harmless if the dismissal can be justified under § 12(b)(5) standards without reference to matters outside of the pleadings. *See* 2A Moore, *supra,* ¶ 12.09[3], at 12–82 n. 8 (citing *Medina v. Rudman,* 545 F.2d 244 (1st Cir. 1976), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977); *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th

Cir.1989)). Moreover, the failure to give notice that the matter is being converted to a summary judgment proceeding "does not necessarily mandate reversal where nothing else could be raised to alter the entry of summary judgment." *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 281 (7th Cir.1986).

[¶ 15.] In dismissing Debra's application, the habeas court went far beyond the pleadings, apparently reviewing the trial record and considering the facts as set forth in this Court's opinion in her direct appeal and in the decisions from her federal habeas proceedings. Although it is generally held that the court cannot go beyond the pleadings in a motion to dismiss under § 12(b)(5), there is at least one exception. In addition to the pleadings and exhibits attached to the pleadings, a court may take judicial notice of matters of public record. 2A Moore, *supra*, ¶ 12.07[2.–5], at 12–89; *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (citations omitted); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979) (on motion to dismiss court can consider factual allegations of complaint and matters of general public record). Despite the language of Rule 12(b), when a court takes judicial notice of facts, it will not convert a dismissal motion into a motion for summary judgment. Only when a court goes beyond judicially noticed facts and pleadings will it be required to convert the motion and give both sides notice and an opportunity to supplement the factual record. *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986), *abrogated on other grounds by Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). In habeas actions a court may take judicial notice of an applicant's prior judicial proceedings. *Alexander v. Solem*, 383 N.W.2d 486, 489 (S.D.1986); *see Boykin v. Leapley*, 471 N.W.2d 165, 167 (S.D.1991); *Lee v. DeLano*, 466 N.W.2d 842, 843 (S.D.1991). These materials are "not subject to reasonable dispute" and their "accuracy cannot reasonably be questioned." SDCL 19–10–2 (Rule 201(b)). Moreover, "[a] court may take judicial notice, whether requested or not." SDCL 19–10–3 (Rule 201(c)).

[¶ 16.] The habeas court properly considered the trial record and the prior opinions in ruling on the § 12(b)(5) motion to dismiss. On review, we examine the same materials to decide if the court ruled correctly. This and the question whether trial counsel was ineffective are ultimately legal questions, reviewable de novo. *Lykken v. Class*, 1997 SD 29, ¶ 6, 561 N.W.2d 302, 304–05 (quoting *Aliberti v. Solem*, 428 N.W.2d 638, 640 (S.D.1988)). South Dakota has adopted the test for ineffective assistance of counsel announced in *Strickland. See Jones v. State*, 353 N.W.2d 781, 784–86 (S.D.1984). In *Strickland*, the United States Supreme Court stated:

> A convicted defendants' claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064; *see also Phyle v. Leapley*, 491 N.W.2d 429, 432 (S.D. 1992), *as modified by Hopfinger v. Leapley*, 511 N.W.2d 845, 846–47 (S.D.1994). A habeas applicant must rebut the "strong presumption" that counsel was competent. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). The burden is on the applicant to prove that counsel's substandard performance prejudiced the outcome. *Hofer v. Class*, 1998 SD 58, ¶ 9, 578 N.W.2d 583, 585; *Phyle*, 491 N.W.2d at 432; *Ashker v. Solem*, 457 N.W.2d 473, 475–76 (S.D.1990). Prejudice is found when there is "a reasonable probability that, but for the unprofessional errors of counsel, the result of the proceeding would have been

different." *Phyle*, 491 N.W.2d at 432; *see Ashker*, 457 N.W.2d at 476. A reasonable probability means proof sufficient to "undermine confidence in the outcome." *Phyle*, 491 N.W.2d at 432. We need not determine the sufficiency of counsel's performance before examining whether the defendant was prejudiced by "alleged deficiencies," however. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Id.*

■ [¶ 17.] Here, we take the Supreme Court's suggestion and go directly to the second prong of the *Strickland* standard. The question is whether, as a matter of law, failure to counter the testimony of Dr. Randall prejudiced the outcome of the trial. Debra never alleged in her application or suggested in this appeal that there are any experts who would materially contradict Dr. Randall's opinions. In her reply brief in this appeal she pinpointed her primary complaint, contending that "trial counsel should have either versed himself in forensic pathology sufficient to cross-examine Dr. Randall's new testimony [the 'unique' mark the airplane made] or sought a rebuttal expert witness." Dr. Randall had not identified this wound for its uniqueness in his pathology report. He gave this opinion for the first time at trial. However, on cross-examination Dr. Randall admitted that this wound on Abby's body was only "similar" in shape. Dr. Randall did not testify that any of the wounds were in fact caused by the airplane found in the Jenner home. What could a counterexpert have said on this point that would be so impeaching as to have changed the outcome of this case? Debra's counsel gives us no suggestion.

[¶ 18.] The child was stabbed approximately seventy times. Some of the injuries were caused by a knife, others by a different instrument having physical properties similar to the airplane. Assuming for argument's sake that trial counsel's practice was deficient, how the outcome could have been different seems inconceivable. As we said in her direct appeal, "a mass of circumstantial and direct evidence convinced [the] jury, beyond a reasonable doubt," that she murdered

her child. *Jenner*, 451 N.W.2d at 724. It was not only the pathologist's opinion. Indeed, "[t]he evidence against Debra includes her own statements[ ] ...; and when she remarked that her hair was down, and Abby pulled it, this tallies with the hair samples taken from Abby's body. This is highly damning against her." *Id.* at 723. We conclude the habeas court properly dismissed her application under § 12(b)(5) for failure to state a claim upon which relief can be granted.

### 3. Post-conviction DNA Analysis

■ [¶ 19.] Punishment of the innocent may be the worst of all injustices. To avoid such a grievous outcome courts should solemnly consider reopening a case if a "truly persuasive" showing of actual innocence lies close at hand. *See Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 869, 122 L.Ed.2d 203 (1993), *reh'g denied*, 507 U.S. 1001, 113 S.Ct. 1628, 123 L.Ed.2d 186 (1993); *see also Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), *superseded by statute in Lambert v. Blackwell*, 962 F.Supp. 1521 (E.D.Pa.1997). Debra contends that the latest DNA testing technology can prove that the hair found on Abby's body was not Debra's. When newly developed scientific procedures can establish innocence in a conviction laden with doubt, then elementary fairness may compel the new testing. *See Mebane v. State*, 21 Kan.App.2d 533, 902 P.2d 494, 497 (1995); *see also Dabbs v. Vergari*, 149 Misc.2d 844, 570 N.Y.S.2d 765, 767–68 (N.Y.Sup.1990) (discovery of exculpatory evidence through post-conviction DNA testing). *See generally United States v. Bagley*, 473 U.S. 667, 674–75, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985) (due process mandates that courts work to "ensure that a miscarriage of justice does not occur"); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."); *State v. Steele*, 510 N.W.2d 661, 665 (S.D.1994); *Ashker*, 457 N.W.2d at 477. Yet, not every convict who cries innocence will be able to reopen a case to analyze old evidence. Our

system of justice will hold little respect if its judgments are never final. Only in extraordinary circumstances should a court allow post-conviction scientific testing.

[¶ 20.] After careful consideration, we have formulated the following guidelines for when post-conviction scientific analysis may be authorized: First, the evidence and test results must meet the *Daubert* standard for scientific reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *on remand,* 43 F.3d 1311 (9th Cir. 1995), *cert. denied,* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995). A showing must be made that if the matter were presently tried the defendant would be entitled to the testing and the results would be admissible. Second, because convicted defendants may not obtain reconsideration of their cases whenever some new technology promises to reveal another angle on the evidence against them, it must be shown that a favorable result using the latest scientific procedures would most likely produce an acquittal in a new trial. *See Dumond v. Lockhart,* 911 F.2d 104, 107 (8th Cir.1990) (stating that even if projected DNA test result of semen would comport with petitioner's best scenario, it must still be shown this evidence "would probably produce an acquittal"); *Zeigler v. State,* 654 So.2d 1162, 1164 (Fla.1995). *But see Dabbs,* 570 N.Y.S.2d at 767, 768 (evidence of "high exculpatory potential" should be discoverable after conviction). Third, testing should not be allowed if it imposes an unreasonable burden on the State. *See generally State v. Fowler,* 1996 SD 78, ¶ 21, 552 N.W.2d 92, 96. An exorbitant cost may be grounds for denial, for example, especially if anticipated test results promise to be less than definite. If testing is allowed, the court should impose reasonable safeguards to ensure the preservation and integrity of the evidence. With biological evidence, courts have generally found post-conviction testing most suitable when (a) identity of a single perpetrator is at issue; (b) evidence against the defendant is so weak as to suggest real doubt of guilt; (c) the scientific evidence, if any, used to obtain the conviction has been impugned; and, (d) the nature of the biological evidence makes testing results on the issue of identity virtually dispositive.

[¶ 21.] Applying these guidelines, post-conviction scientific analysis is unsuitable here. We discern no likelihood that a favorable DNA test result of the hair and blood evidence would produce an acquittal were Debra granted a new trial. The evidence against her was highly persuasive. Proof that the hair found in her dead child's hand was not hers, but Abby's, would only create another circumstance on which to argue reasonable doubt. It would not be conclusive on the question of innocence, especially in light of all the other evidence against her, including her oblique but damaging admissions. Expert criminalist, Rex Riis, eliminated the father as the originator of the hair found on Abby's body and the credibility of his examination has not been challenged in this respect. Anticipated proof that the hair originated from some unknown aggressor is highly improbable. Investigators found no trace of any trespasser in the home. Because the intruder theory was so implausible and the facts to support it so remote, the trial court precluded Debra's effort at trial to offer third party perpetrator evidence and we affirmed that ruling. Simply because a new technology is available to test the evidence does not make this theory any more relevant now than it was before. In sum, DNA testing is not appropriate in this case because it appears to revive a legally and factually insupportable defense. *See Jenner,* 451 N.W.2d at 722–23.

[¶ 22.] Affirmed.

[¶ 23.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.