2001 SD 30

2001 SD 136

**Kelly Lynn JACKSON, Applicant and Appellant,**

v.

**Douglas WEBER, Warden of the South Dakota State Penitentiary, Appellee.**

**No. 21364.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 2000.

Reassigned Jan. 17, 2001.

Decided March 7, 2001.

Considered on Briefs on Rehearing Oct. 2, 2001.

Rehearing Decided Nov. 14, 2001.

Rehearing Denied Jan. 9, 2002.

*v. Weber*, # 21364, 2001 SD 30, 623 N.W.2d 71 (2001). The state filed a petition for rehearing which was granted on April 18, 2001.

[¶ 2.] Upon rehearing and rebriefing by the parties, we determine that the second habeas court held a hearing and determined against ineffective assistance of counsel in the first habeas, and that there is not a sufficient showing to overcome that determination. Therefore, we affirm the order of the habeas court which denied the petition.

[¶ 3.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and MILLER, Retired Chief Justice, concur.

SABERS, Justice (on reassignment).

[¶ 4.] Jackson appeals the denial of his petition for habeas corpus relief, which was denied pursuant to SDCL 21–27–16.1 because he failed to raise the jurisdictional issue in his first habeas petition. Jackson claims his initial habeas counsel was ineffective in not raising said issue. Since a person is entitled to effective assistance of counsel under South Dakota law to determine on habeas on one occasion whether he received effective assistance of counsel in the main event, we reverse and remand for a hearing.

Steven R. Binger, Binger Law Office, Sioux Falls, for applicant and appellant.

Mark Barnett, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Pierre, for appellee.

SABERS, Justice (reassignment on rehearing).

[¶ 1.] The facts underlying this habeas corpus proceeding are set forth in *Jackson*

### FACTS AND PROCEDURE

[¶ 5.] Jackson was convicted of aggravated assault on December 23, 1988. The trial court sentenced him to fifteen years in the state penitentiary. That sentence was suspended and Jackson was placed on three years of probation. On three separate occasions, for various infractions, the State filed motions to revoke Jackson's suspended sentence. Each time, Jackson was ordered to serve time in the county

jail. A fourth motion to revoke was filed on January 29, 1991. As a result of this motion, Jackson was sentenced to 15 years in the State penitentiary on April 1, 1991. At a hearing to modify the sentence on December 9, 1991, the trial court stated:

I'll stay execution on the balance of his sentence on condition that he abide by the standard probation agreement with the Court Services for a period of three years, that he pay restitution in all cases here in Minnehaha County, that he repay Minnehaha County for his court appointed attorney fees through Court Services.

I'm not positive—I might—I might even stick him on intense [probation], but I'm not sure yet. I haven't made up my mind. But I'll let you know before the first if I do that, of course. He'll have to be accepted and successfully complete intense probation.

On December 31, 1991, the trial court issued a written order suspending the remainder of Jackson's sentence and placing him into intensive probation, and upon completion of that program, three years of standard probation. On January 17, 1992, Jackson signed a form entitled "Conditions of Intense Probation," which referenced the December 31, 1991 order. That form provided that the period of probation would be for three years, without mention of an initial period of intense probation.

[¶ 6.] On May 23, 1992, the State moved to revoke Jackson's probation based on numerous violations. Because of these violations, the trial court ordered Jackson to serve 90 days in the county jail and to remain out of the State of South Dakota for five years from the date of his release. On March 3, 1995, the State moved to revoke Jackson's suspended sentence, alleging that he had violated his probation when he committed the offenses of false impersonation and resisting arrest.

At a hearing on April 24, 1995, the trial court revoked Jackson's suspended sentence, and reimposed the original fifteen-year sentence. Jackson's sentence was later reduced to ten years.

[¶ 7.] On March 12, 1997, Jackson filed an application for a writ of habeas corpus. He alleged the revocation of his suspended sentence in 1995 was unconstitutional as a violation of due process. Jackson claimed that the 1992 order revoked the prison sentence, rather than merely suspending it, therefore, no suspended prison sentence remained that could be re-imposed in 1995. This habeas petition was denied on December 9, 1997. The habeas court also denied Jackson's request for a certificate of probable cause.

[¶ 8.] The present habeas petition was filed on July 20, 1999. This petition alleged that the original trial court lacked jurisdiction to revoke Jackson's suspended sentence because Jackson's probation expired on January 1, 1995 and the original habeas counsel was ineffective for failing to assert this jurisdictional error. This allegation of jurisdictional error rested upon the trial court's statement at the December 1991 hearing that it would stay the balance of Jackson's sentence, if he completed three years of probation. Jackson claimed that this oral pronouncement was clear and unambiguous as to the length of probation (three years), and that the court's subsequent written order of three years probation plus intense probation invalidly contradicted its prior oral sentence. The State filed a motion to dismiss the petition based on SDCL 21–27–16.1, which provides as follows:

All grounds for relief available to a petitioner under this chapter shall be raised in his original, supplemental or amended application. Any ground not raised ... may not be the basis for a subsequent application, unless the court finds

grounds for relief asserted which *for reasonable cause* were omitted or inadequately raised in the original, supplemental or amended application. (emphasis added).

The habeas court granted the State's motion on December 15, 1999 and Jackson appeals.

## STANDARD OF REVIEW

[¶ 9.] Our standard of review for a habeas appeal is well established. Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited. On habeas review, the petitioner has the initial burden of proof. We review the habeas court's factual findings under the clearly erroneous standard. *Weddell v. Weber*, 2000 SD 3, ¶ 13, 604 N.W.2d 274, 279 (quoting *Sund v. Weber*, 1998 SD 123, ¶ 12, 588 N.W.2d 223, 225) (other citations omitted). Questions of law, however, are reviewed de novo. *Jenner v. Dooley*, 1999 SD 20, ¶ 11, 590 N.W.2d 463, 468.

[¶ 10.] **UNDER SOUTH DAKOTA LAW, A PERSON IS ENTITLED TO EFFECTIVE ASSISTANCE OF COUNSEL TO DETERMINE ON HABEAS ON ONE OCCASION WHETHER HE RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL IN THE MAIN EVENT. THEREFORE, INEFFECTIVE ASSISTANCE OF COUNSEL ON STATE HABEAS OVERCOMES THE PROCEDURAL BAR OF SDCL 21–27–16.1.**

[¶ 11.] To escape the mandate of SDCL 21–27–16.1, a habeas petitioner must generally show "reasonable cause." To clarify the definition of reasonable cause, we adopted the federal "cause and prejudice" test in *Gregory v. Solem*, 449 N.W.2d 827, 831 (S.D.1989). Before relief will be granted under that test, a petitioner must show:

1. Cause for his omission or failure to previously raise the grounds for habeas relief; and

2. Actual prejudice resulting from the alleged constitutional violation.

To show "cause," the petitioner "must show that some objective factor external to the defense impeded counsel's efforts to comply with [SDCL 21–27–16.1]." *Id.* at 830. The "prejudice" prong requires the petitioner to show " 'that [the errors] worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *Id.* at 831 (quoting *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397, 412 (1986)) (emphasis in original).

[¶ 12.] It is beyond dispute that our legislature has required that counsel be appointed for indigent prisoners in habeas proceedings. SDCL 21–27–4. Our legislature has spoken in spite of the fact that the United States Constitution does not mandate this requirement. *See Coleman v. Thompson*, 501 U.S. 722, 755, 111 S.Ct. 2546, 2567, 115 L.Ed.2d 640, 672 (1991). In light of our legislature's pronouncement, we must determine the standard to govern an ineffectiveness claim in a habeas appeal.

[¶ 13.] In *Krebs v. Weber*, there was dicta which indicated that the *Strickland* standard was not appropriate for determining if the statutory right to counsel had been fulfilled. The State asserts that this dicta mandates that the *Gregory*, "cause and prejudice test" should govern instances when the right to counsel was statutorily granted.

[¶ 14.] The effective assistance of counsel standard announced in *Strickland* is well established. As recognized by at least one other court, "it would be absurd to have the right to appointed counsel who

is not required to be competent." *Lozada,* 613 A.2d at 821; *Iovieno v. Comm. of Correction,* 242 Conn. 689, 699 A.2d 1003, 1010 (1997). We will not presume that our legislature has mandated some "useless formality" requiring the mere physical presence of counsel as opposed to effective and competent counsel. *Lozada,* 613 A.2d at 821.

[¶ 15.] The actual holding in *Krebs* supports this position. As the majority in *Krebs* noted, "no attorney, even one mounting a textbook perfect all-out effort let alone one who meets the *Strickland* standard of competence, could have produced a different result." *Krebs,* 2000 SD 40, at ¶ 12, 608 N.W.2d at 326; *see also Id.* at ¶ 21 (Sabers, J., concurring specially in part and dissenting in part). A position that a statutory right to counsel does not mean effective assistance of counsel is at odds with commonsense and our prior analytical framework. In other words, if the appointment of incompetent counsel was adequate in *Krebs,* there would have been no reason to even consider *Strickland,* ineffectiveness, or prejudice. To the extent the dicta in *Krebs* is inconsistent with this opinion, it is overruled.[1]

[¶ 16.] We agree with the rationale employed by the Appellate Court of Illinois when addressing the statutory right to counsel. *In the Matter of Carmody,* 274 Ill.App.3d 46, 210 Ill.Dec. 782, 653 N.E.2d 977, 983 (1995). In addressing this statutory right, the court concluded that providing a right to counsel implicitly included *effective counsel,* as required by *Strickland. Id.* "[T]he legislature could not have intended to provide an individual ... with the right to counsel and to permit that counsel to be prejudicially ineffective." *Id.* at 984. After being granted a state *right*

"it would be a hollow gesture serving only superficially to satisfy due process requirements." *Id.* (citations omitted). We agree with those courts that have held that than an independent right to effective assistance of counsel arises by statute in postconviction hearings. *See Young v. State,* 724 So.2d 82, 83 (Ala.Cr.App. 1998); *Bejarano v. Warden,* 112 Nev. 1466, 929 P.2d 922, 926 (1996); *McKague v. Whitley,* 112 Nev. 159, 912 P.2d 255, 258 n.5 (1996).

[¶ 17.] We recognize that if habeas counsel must meet the same competency standards as trial counsel, then more than one claim of ineffective assistance of counsel may be brought on occasion. However, ineffective assistance of counsel at a prior habeas proceeding is not alone enough for relief in a later habeas action. Any new effort must eventually be directed to error in the original trial or plea of guilty. A refusal to acknowledge that the requirement of counsel means *constitutionally effective counsel* would weaken the habeas mechanism to ensure "as a bulwark against convictions that violate fundamental fairness." *Lozada v. Warden,* 223 Conn. 834, 613 A.2d 818, 822 (1992). Jackson's decision to exercise his right, as provided by state statute, requires this Court to recognize his constitutional substantive due process right to *effective* assistance of counsel.

[¶ 18.] Our holding must be that the counsel mandated by SDCL 21–27–4 makes it "implicit that this means competent counsel." *Lozada,* 613 A.2d at 822. Therefore, the decision to dismiss Jackson's petition pursuant to SDCL 21–27–16.1 is reversed. Jackson is entitled to a hearing to determine whether his initial habeas counsel was deficient, and, if so,

---

1. The dissent's accusation that we are overturning *Krebs* on a mere whim is absurd. The light in which the dissent reads *Krebs* evidences the very reason it must be overruled. The dicta in *Krebs* compromises its real holding.

whether it resulted in prejudice under *Strickland*.

[¶ 19.] Therefore, we reverse and remand for a hearing consistent with this opinion.

[¶ 20.] AMUNDSON, Justice, concurs.

[¶ 21.] KONENKAMP, Justice, concurs specially.

[¶ 22.] GILBERTSON, Chief Justice, and MILLER, Retired Chief Justice, dissent.

KONENKAMP, Justice (concurring specially).

[¶ 23.] I agree with the majority that when a habeas corpus applicant is statutorily entitled to mandatory appointment of counsel, the appointment implicitly includes the right to effective assistance of counsel. To the extent that my concurrence in *Krebs* can be understood to say the opposite, then I must regretfully confess my oversight. Like so many judges have said in the past in acknowledging a mistake, all I can say is that having now realized it, I choose not to remain in error.

[¶ 24.] Although the *Strickland* standard was created in the Sixth Amendment context, it can adequately serve as a benchmark where the right to counsel is mandated by statute. *Strickland* provides a rational and practical method for reviewing the performance of habeas counsel. I see no reason to create some new standard to evaluate claims of "statutorily ineffective assistance" as opposed to claims of "constitutionally ineffective assistance." *Strickland* has been employed in other types of civil proceedings to evaluate ineffective assistance claims. *See e.g., Cogan v. KAL Leasing, Inc.,* 190 Ill.App.3d 145, 137 Ill.Dec. 396, 546 N.E.2d 20, 25 (1989).

[¶ 25.] Why a right to effective assistance of counsel in habeas proceedings? Perhaps the most important reason is that

the Legislature provided a statutory right to counsel for indigent applicants in SDCL 21–27–4. Several courts have held that there is an independent right to effective assistance of counsel in post-conviction proceedings if appointment of counsel is mandated by statute. *See e.g., Bejarano v. Warden* 112 Nev. 1466, 929 P.2d 922, 925 (1996); *McKague v. Warden,* 112 Nev. 159, 912 P.2d 255, 258 n.5 (1996) (citations omitted). *Cf. Follinus v. State,* 127 Idaho 897, 908 P.2d 590, 595–96 (Idaho App.1995)(because Idaho law no longer mandates appointment of post-conviction counsel, there can be no statutory right to effective counsel).

[¶ 26.] I recognize the difficulty presented when habeas counsel must meet the same competency standards as trial counsel: claims of ineffective assistance in earlier proceedings might be raised repeatedly. This problem is mitigated, however, because *Krebs* still stands for the proposition that ineffective assistance of counsel at a prior habeas proceeding is not by itself grounds for relief in a later habeas proceeding. Incompetence in a habeas case cannot make the original conviction invalid. The habeas remedy is addressed solely to the original conviction. Any new efforts must be directed to error in the criminal trial or plea of guilty. Because a habeas petition challenges the validity of the conviction, the ineffectiveness of habeas counsel is only germane to the extent that habeas counsel may have failed to elicit the original invalidity.

[¶ 27.] There is one other reason why, when the statute mandates the appointment of habeas counsel, we must require the attorney to be effective. If the defense attorney was ineffective in the original criminal proceeding and habeas counsel was thereafter ineffective in ferreting out the invalidity of the conviction, we may never know if the convicted person had a

fair trial or, God forbid, was actually innocent. Our criminal justice system has little value if it cannot differentiate the guilty from the innocent with a high degree of certainty. Successive incompetence can create disaster. We need only consider the recent revelations in Illinois to show how disastrous it can be: half the persons on death row were later proven innocent. I am confident that South Dakota will have no repetition of what happened there. We have a long and honorable tradition of appointing only the most capable and experienced lawyers to represent criminal defendants in capital and other serious cases. We should encourage that tradition.

GILBERTSON, Chief Justice (dissenting).

[¶ 28.] Less than one year ago, this Court by a four to one vote in *Krebs v. Weber*, 2000 SD 40, 608 N.W.2d 322, held that there is no constitutional or statutory right to evaluate the performance of habeas counsel under the standard set forth solely for criminal actions in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Since that time, there have been no relevant amendments to the applicable constitutional provisions nor state or federal statutes. Neither has there been any decision in the federal courts that would mandate an overturn of *Krebs*. Yet today, this Court overturns *Krebs* without any proper basis to do so. Bottom line-nothing has changed except the bottom line.

[¶ 29.] I agree with the Court that there is no federal constitutional or statutory mandate that *Strickland* is applicable to South Dakota habeas proceedings. *Krebs*, 2000 SD 40, at ¶¶ 7-9, 608 N.W.2d at 324-5. Likewise, there is nothing in the South Dakota Constitution to support such a claim. Thus, to justify the thesis of the Court, the sole potential source of authority is SDCL 21-27-4. As such, this case is one of statutory construction. SDCL 21-27-4 states:

> If a person has been committed, detained, imprisoned or restrained of his liberty, under any color or pretence whatever, civil or criminal, and if upon application made in good faith to the court or judge thereof, having jurisdiction, for a writ of habeas corpus, it is satisfactorily shown that the person is without means to prosecute the proceeding, *the court or judge shall appoint counsel for the indigent person* pursuant to chapter 23A-40. Such counsel fees or expenses shall be a charge against and be paid by the county from which the person was committed, or for which the person is held as determined by the court. Payment of all such fees or expenses shall be made only upon written order of the court or judge issuing the writ. (emphasis added).

Clearly, no reference to *Strickland* or anything similar to its holding can be gleaned from the pertinent portions of the statute. The reason is obvious. The relevant part of what is now SDCL 21-27-4 was enacted in 1943. *See* SL 1943, ch. 126.[2] Portions

---

2. The statute as originally enacted in 1943 stated:

> In any case where a person shall have been committed, detained, imprisoned or restrained of his or her liberty, under any color or pretense whatever, civil or criminal, and where upon application made in good faith to the Court or Judge thereof, having jurisdiction, for a Writ of Habeas Corpus, it is satisfactorily shown that such person is without means to prosecute the proceeding, *the Court or Judge shall appoint counsel for such indigent person,* and such counsel so appointed, after the disposition of such proceeding, shall be paid a reasonable and just compensation for his services .... (emphasis added).

of the statute not pertinent to this issue were amended in 1969 (SL 1969 ch. 163) and 1983 (SL 1983 ch. 169 § 5). *Strickland* was not decided by the United States Supreme Court until May 14, 1984. The Court does not explain how the 1943 South Dakota Legislature was able to foresee the 1984 *Strickland* decision and further intended that it be incorporated into the civil habeas corpus statute it was enacting.

[¶ 30.] As was further pointed out in *Krebs*, the Legislature's lack of action since 1984 to incorporate *Strickland* standards into the habeas statutes is also consistent with the premise it did not want to do so. *Krebs*, 2000 SD 40, at ¶ 9, 608 N.W.2d at 325.[3] The case is well-known in the criminal area and has fostered numerous cases within this Court as well as nation-wide. Yet, the reaction of the Legislature has been silence. Its 1943 statutory language remains intact.

[¶ 31.] Philosophically, the theory of the Court to apply *Strickland* to habeas cases obviously has its supporters. It is a rational alternative. However, that policy decision is not one to be made by this Court under the guise of statutory interpretation—it is constitutionally the sole prerogative of the Legislature. This Court has been a champion of upholding the doctrine of separation of powers in guarding against improper encroachments upon its constitutional duties and obligations. We should be equally as zealous to insure we do not fail to grant the same constitutional deference to the Legislature in this instance.

[¶ 32.] Moreover, we are not blowing the dust off of an ancient decision of the earliest days of this Court that can no longer be upheld based on current rules of statutory construction. Rather, we overrule a case upon which the ink is barely dry and in which the same five jurists participated that participate in this case today. I respectfully argue that this Court got it right the first time less than one year ago in *Krebs*. We would do well to heed the words of Justice Wollman in *Daugaard v. Baltic Co-op.*, 349 N.W.2d 419, 428 (S.D.1984) (Wollman, J., dissenting):

> If we were free to strike down statutes willy-nilly on the basis of our personal feelings, the result of the proposed opinion might be justifiable. Once this court, or any other court for that matter, starts down that road, however, I see no end in sight. Although it might well be a heady, enjoyable experience to correct what we may perceive to be unwise, ill-conceived legislation, I see no warrant for us to do so in the absence of palpably unconstitutional legislative action.
>
> . . .
>
> [This] decision will do nothing to add to this court's reputation for constancy, consistency and reasoned elaboration.

---

**3.** The Court today declares our holding in *Krebs* to be mere dicta. In so doing it focuses on one sentence taken out of context at the end of the *Krebs* opinion. However, placed in context, that sentence: "no attorney, even one mounting a textbook perfect all-out effort let alone one who meets the *Strickland* standard of competence, could have produced a different result" is in reference to the preceding paragraph which discussed the lack of prejudice that resulted from the failure of counsel to file an *Anders/Sweeney* brief. *Krebs*, 2000 SD 40, at ¶¶ 11–12, 608 N.W.2d at 325–6.

The issue in *Krebs*, as framed by the Court, stated: "Krebs argues Thompson rendered ineffective assistance of counsel per *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) during his first habeas proceeding...." *Id.* at ¶ 7, 608 N.W.2d at 324. To claim our decision that Krebs was not entitled to constitutionally effective counsel in his initial habeas petition to be dicta, provides a convenient, yet unpersuasive, explanation to escape the unavoidable conclusion that *Krebs* had been overruled in its entirety.

[¶ 33.] For the above reasons I respectfully dissent.

[¶ 34.] MILLER, Retired Chief Justice, joins this dissent.