2002 SD 11

**Marlo D. HOFMAN, Petitioner and Appellant,**

**v.**

**Douglas WEBER, Warden, South Dakota State Penitentiary, Respondent and Appellee.**

**No. 21928.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 13, 2001.

Decided Jan. 23, 2002.

Michael B. Thompson, Sioux Falls, South Dakota, for petitioner and appellant.

Mark Barnett, Attorney General, Sherri Sundem Wald, Pierre, South Dakota, for respondent and appellee.

AMUNDSON, Justice.

[¶ 1.] Marlo Hofman (Hofman) petitioned for writ of habeas corpus. The habeas court denied his petition. We reverse and remand.

### FACTS

[¶ 2.] Hofman was convicted of first degree murder at a jury trial and received a life sentence. Hofman appealed his conviction directly to this Court, which affirmed. State v. Hofman, 1997 SD 51, 562 N.W.2d 898. Hofman then filed a petition for writ of habeas corpus.

[¶ 3.] On June 19, 1995, Ronald "Doc" Hofman (Doc) was beaten and stabbed to death inside the bar he owned in Brandt, South Dakota. Hofman, Doc's brother, became a suspect in the death. Law enforcement asked Hofman to go to Sioux Falls to take a polygraph test, which he did, and the test indicated Hofman had not been truthful in his answers. Immediately following the polygraph test, Department of Criminal Investigation Agent Bryan Gortmaker elicited a videotaped admission by Hofman. Following the questioning, Hofman, who had a history of mental illness, asked to be admitted to McKennan Hospital in Sioux Falls. He was taken to McKennan, where again, at the urging of Gortmaker, Hofman confessed to his cousin, Brian Ruhd, that he had caused his brother's death.

[¶ 4.] After McKennan Hospital refused to admit Hofman, Gortmaker took Hofman to Brookings while in the process of transferring him to Deuel County, where the murder had occurred. The Deuel County Deputy Sheriff, Dave Solem, met up with Hofman and Gortmaker in Brookings, at which time Hofman was advised of his constitutional rights. Hofman waived his rights and again, at the prompting of Gortmaker, confessed to Deputy Solem that he had murdered his brother.

[¶ 5.] Hofman was taken from Brookings to Watertown for detention. Upon his arrival in Watertown, Marie Suman, the jailer on duty, inquired into Hofman's reasons for being jailed. Hofman again admitted to killing his brother. In addition to his statement to Suman, Hofman also allegedly admitted to Todd Bren, another inmate at the Watertown jail, that he had killed his brother. The record also reflects that Hofman denied his guilt to a second inmate in the jail, Ron Tvedt.

[¶ 6.] After a hearing, the habeas court concluded Hofman's admissions to Ruhd, Solem and Suman were involuntary, but found no prejudice resulted from their admission into evidence. The habeas court denied relief. Hofman appeals the habeas court's decision on the following issues:

1) **Whether Hofman was prejudiced by his trial counsel's failure to timely move for the suppression of admissions given shortly after an involuntary confession was made, thereby resulting in ineffective assistance of counsel.**

2) **Whether Hofman's trial counsel was ineffective by failing to call a witness who could have testified that Hofman denied killing his brother.**

### STANDARD OF REVIEW

[¶ 7.] The review of habeas decisions is "a collateral attack on a final judgment," and thus more restricted than ordinary appeals. *See Krebs v. Weber*, 2000 SD 40, ¶ 5, 608 N.W.2d 322, 324 (citations omitted) *overruled on other grounds by Jackson v. Weber*, 2001 SD 136, 637 N.W.2d 19. The recognized standard of review is to determine: "(1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights." *Id.* We will not reverse the habeas court's findings unless they are clearly erroneous. *Id.* Therefore, if the habeas court was "right for any reason," we may affirm its ruling. *Id.*

[¶ 8.] In order for Hofman to succeed on his claim of ineffective assistance of counsel, he must pass what is known as the *Strickland* test. *See Davi v. Class*, 2000 SD 30, ¶¶ 15–17, 609 N.W.2d 107, 111–12 (recognizing the test for ineffective assistance of counsel as outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Under the *Strickland* test, Hofman must first demonstrate that his trial counsel was not "functioning as counsel guaranteed by the Constitution[.]" *Id.* at ¶ 16. He must also prove prejudicial error so great that he was deprived of a fair trial. *Id.* Under the prejudice prong of the *Strickland* test, a reasonable probability of a different outcome in which confidence in the jury's verdict was seriously undermined must be proven. *Weddell v. Weber*, 2000 SD 3, ¶ 25, 604 N.W.2d 274, 281 (citing *Loop v. Class*, 1996 SD 107, ¶ 14, 554 N.W.2d 189, 192). We have stated:

> [W]hether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This [C]ourt, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inaction constituted ineffective assistance of counsel.

*Weddell*, 2000 SD 3 at ¶ 27, 604 N.W.2d at 281–82 (citations omitted). Furthermore,

there is a presumption that counsel is competent, and if the presumption is not overcome, the *Strickland* test has not been satisfied. *Ramos v. Weber*, 2000 SD 111, ¶ 12, 616 N.W.2d 88, 92.

## DECISION

[¶ 9.] **1) Whether Hofman was prejudiced by his trial counsel's failure to timely move for the suppression of admissions given shortly after an involuntary confession was made, thereby resulting in ineffective assistance of counsel.**

[¶ 10.] Prior to trial, the court suppressed the videotaped confession to Gortmaker given after the polygraph test, holding it was involuntary. On the day of trial, after the jury had been selected, Hofman's counsel moved to suppress Hofman's statements to Ruhd and Solem. The trial court denied the motion as untimely. That ruling of the court was affirmed on direct appeal. *Hofman*, 1997 SD 51 at ¶ 10, 562 N.W.2d at 901 (citing SDCL 23A–8–3; *State v. Maves*, 358 N.W.2d 805, 810 (SD 1984)).

[¶ 11.] A decision of this Court prior to Hofman's trial held that subsequent statements made in close time-proximity to inadmissible statements may be suppressed. *See State v. Helmer*, 1996 SD 31, ¶ 32, 545 N.W.2d 471, 476.[1]

When preceding confessions or statements are inadmissible, subsequent statements are not automatically inadmissible, but they are suspect. *State of South Dakota v. Long*, 465 F.2d 65, 70 (8thCir.1972). "If from the facts, it is found that the two statements are so closely related as to taint the second, and there are no intervening events sufficient to purge the taint, the second must also be inadmissible." *Id.* The connection between the improper interrogation and the final incriminating statement must be so attenuated as to dissipate the taint. *Stumes v. Solem*, 671 F.2d 1150, 1158 (8thCir.1982) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The reason for suppressing statements which follow an earlier involuntary statement parallels the reason for the suppression of the original statement. *People v. Badgett*, 10 Cal.4th 330, 41 Cal.Rptr.2d 635, 895 P.2d 877, 886 (1995) (citing *Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967)). The second statement should be suppressed as it is involuntary in itself unless the taint of the first has been attenuated by the passage of time or other reasons. *Id.*

*Id.* at ¶ 32.

[¶ 12.] To determine if subsequent statements are sufficiently attenuated so as to remove the taint from the prior improper statement, we have said that an array of factors may be analyzed. *Id.* at ¶ 33. They include: "a removal in time

---

1. Trial counsel stated, at the habeas hearing:
   [T]he Helmer decision came out fairly close to trial ... as I recall, [it was the first time] South Dakota addressed the issue of the attenuation of voluntary statements. But regardless, my view was that once the confession made to Gortmaker was suppressed, ... I made a tactical decision to try and frankly sand bag the subsequent ones ... In other words, I did not want to give the State an opportunity to establish further voluntariness.

   We have never recognized "sandbagging" the opposition as a strategic decision earning the presumption given trial strategies. Furthermore, the *Helmer* decision came down at least a month prior to Hofman's trial, so counsel could have reviewed it well in advance of trial or made a motion regarding its holding. It is obvious from reviewing the *Helmer* decision that its basis is not a new or novel theory advanced in support of suppressing subsequent statements.

and place from the original setting, an adequate advisement of the accused's constitutional rights, and the opportunity to exercise those rights." *Id.* (citing *Satter v. Solem*, 458 N.W.2d 762, 768 (S.D.1990); *Westover v. United States*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

[¶ 13.] The habeas court acknowledged that the statement by Hofman to his cousin, Ruhd, was involuntary. Although the statements were issued in different places, (one at the Sioux Falls Sheriff's Department where the polygraph test was administered and one at McKennan Hospital) there was little time between the involuntary confession just after the polygraph test and the statement made to Ruhd. Additionally, the confession to Ruhd was made after Gortmaker requested Hofman tell his cousin about his confession, not of Hofman's own volition. Furthermore, Hofman was not advised of his constitutional rights at anytime between these two confessions.

[¶ 14.] Next, the habeas court also acknowledged that the statement Hofman made to Solem was involuntary because it, again, was made at the direction of Gortmaker. Even though Hofman was advised of his constitutional rights prior to this confession, it was made in close time-proximity and, again, at the urging of DCI Agent Gortmaker.

[¶ 15.] Finally, the habeas court determined Hofman's confession to Suman was involuntary. Because of Hofman's mental condition, educational level, susceptibility to suggestion, the lack of re-advisement of Hofman's constitutional rights and the limited amount of time that had passed, the statements were tainted by the previous involuntary videotaped statements to Gortmaker.[2]

[¶ 16.] Importantly, the State does not contest the trial court's holding that the subsequent statements were involuntary. In fact, it stated in brief, "[T]he habeas court concluded that statements Petitioner made to Ruhd, Gortmaker and Solem, as well as to Suman on June 24 were so closely related to the suppressed videotaped statement initially given to Gortmaker, that each of the statements was involuntary and therefore should have been suppressed. The State does not challenge this holding on appeal." Thus, our sole focus must be whether, by entering these statements into evidence, any prejudice occurred. As previously stated, prejudice requires error to such a degree that confidence in the prior decision is eroded, and the defendant was deprived of a fair trial. *See Weddell*, 2000 SD 3 at ¶ 25, 604 N.W.2d at 281.

[¶ 17.] These tainted statements constitute a great bulk of the incriminatory evidence presented. In fact, the record reflects that the State repeatedly used these statements, demonstrating how vital they were. During closing arguments the State reinforced to the jury there was not just "one" admission made by Hofman. The State then proceeded to recap each of the statements that the habeas court later found were involuntary and inadmissible. The remainder of the evidence is mostly circumstantial, including a knife without matching blood samples, possible motives and the fact that Hofman was the one who discovered his brother's body. Without these statements to various witnesses, the admissible evidence is not what could be described as so overwhelming that a denial of habeas relief would be appropriate.

[¶ 18.] For the foregoing reasons we agree with the habeas court's determina-

---

**2.** The habeas court found that the statement was not tainted because of the fact that it was so separated in time.

tion that trial counsel acted ineffectively by failing to move to suppress these confessions in a timely manner. We disagree, however, with the habeas court's decision that prejudice did not result from this error. We find the second prong for ineffective assistance of counsel has been met because Hofman was prejudiced by counsel's actions, thereby resulting in an unfair trial. *See Freeman v. Leapley*, 519 N.W.2d 615, 616 (S.D.1994) (stating the prejudice analysis for ineffective assistance of counsel requires inquiry into potentially different outcome and fairness of the trial). Defense counsel was well aware of the confessions long before trial, thus there was no valid reason for failing to suppress them in a timely manner. *Cf. Weddell*, 2000 SD 3 at ¶ 32, 604 N.W.2d at 282–83 (stating strategic decisions will not be second-guessed on habeas appeal). We have previously acknowledged that "this [C]ourt will not compare counsel's performance to that of some idealized 'super-lawyer' and will respect the integrity of counsel's decision in choosing a particular strategy, [but] these considerations must be balanced with the need to insure that counsel's performance was within the realm of competence required of members of the profession." *Sprik v. Class*, 1997 SD 134, ¶ 24, 572 N.W.2d 824, 829 (citations omitted). The error in this case resulted in prejudice to Hofman under the Strickland standard. Therefore, we reverse and remand for a new trial.

[¶ 19.] Based on our decision regarding issue one, we find it unnecessary to address issue two.

[¶ 20.] GILBERTSON, Chief Justice, SABERS, and KONENKAMP, Justices, and GORS, Acting Supreme Court Justice, concur.