#24708-r-JKM

**2008 SD 124**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

OAKLEY ENGESSER,                                Petitioner and Appellee,

    v.

ROBERT DOOLEY,                                Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RANDALL L. MACY
Judge

* * * *

RENA M. HYMANS                                Attorney for petitioner
Sturgis, South Dakota                                and appellee.

LAWRENCE E. LONG
Attorney General

SHERRI SUNDEM WALD
Deputy Attorney General                                Attorneys for respondent
Pierre, South Dakota                                and appellant.

* * * *

ARGUED ON APRIL 23, 2008

OPINION FILED **12/23/08**

#24708

MEIERHENRY, Justice

[¶1.]      The State appeals the circuit court's grant of Oakley B. Engesser's petition for a writ of habeas corpus. This is Engesser's second petition for a writ of habeas corpus in state court. A jury convicted Engesser of vehicular homicide and two counts of vehicular battery. He was sentenced to twenty-five years in the South Dakota State Penitentiary. His conviction was affirmed on appeal in *State v. Engesser*, 2003 SD 47, 661 NW2d 739. His first petition for writ of habeas corpus was denied in circuit court. He then filed for habeas relief in federal court that was also denied, *Engesser v. Dooley,* 2005 WL 1278473 (DSD 2005), and affirmed on appeal. 457 F3d 731 (8thCir 2006). In this second (state) petition for habeas corpus, Engesser claimed that he was deprived of effective assistance of counsel in his first habeas petition and at trial. The circuit court agreed and granted his petition. The State appeals. We reverse.

[¶2.]      Engesser's underlying conviction arose from a July 30, 2000, automobile accident. Engesser and Dorothy Finley were both in Finley's red Corvette when it struck another vehicle from behind while traveling at a speed in excess of one-hundred miles per hour on interstate I-90. Engesser was thrown from the vehicle, and Finley was trapped inside. Finley died at the scene, Engesser suffered a severe head injury, and two of the passengers of the other vehicle were also injured. Blood tests showed that both Engesser and Finley had been drinking. The main issue at trial was whether Finley or Engesser had been driving when the accident occurred. As a result of Engesser's injuries, he could not recall the accident or who was driving.

[¶3.]    Most of the State's proof that Engesser was driving derived from the opinion testimony of Highway Patrol Trooper Fox. Trooper Fox concluded that Engesser was driving based upon the Corvette's seat adjustments, his reconstruction of the accident, and the positioning and location of Finley's and Engesser's bodies after the accident. The names and statements from eye witnesses, including witnesses at the accident scene, were provided to the defense as part of discovery. Trooper Fox indicated on his reports that none of the witnesses could identify who was driving the Corvette.

[¶4.]    Two witnesses, Eric Eckholm and Charlotte (Delaney) Fowler, were originally questioned at the scene. Eckholm's handwritten statement on the South Dakota Highway Patrol Voluntary Statement Form read as follows:

> I was broke down on the east lane, when I heard screeching tires and saw a red corvette hit a small white van backwards, because of [excessive] speed. The corvette lost control in the east bound fast lane and turned over to the slow lane and lost control, hitting the van in the rear. When the corvette lost control it [slid] to the right, spinning around hitting the van in the rear, with its rear.

Eckholm's handwritten statement did not indicate that he saw who was driving the Corvette. Fowler expressly told Trooper Fox that she did not see who was driving. She only saw the aftermath of the collision. In his report, Trooper Fox listed the names of the witnesses he had interviewed and noted, "[no] one able to identify driver." Neither the State nor the defense called Eckholm and Fowler to testify at trial.

[¶5.]    Engesser's trial counsel, Timothy Rensch, testified that he knew Eckholm and Fowler were at the scene and that he had read Trooper Fox's report on

what the two had observed. Neither Rensch nor the private investigators assisting him with the trial followed up with further interviews of Eckholm or Fowler. Rensch testified that he first became aware that Eckholm might be able to identify the driver as a woman when Eckholm telephoned him a couple of years after Engesser had been convicted, while the case was on appeal. Rensch recalled receiving a telephone call from Eckholm in the fall of 2002 or spring of 2003. Eckholm thought he called Rensch in 2003 when he read about the case in a newspaper. Rensch testified that he passed along the information from Eckholm to the State's Attorney and to Engesser's first habeas lawyer, Matt Kinney. However, Rensch said he warned Kinney to "watch out when you interview [Eckholm], it could be problematic because he's indicated to me a description [of a driver with blond hair] that was more consistent with Bernie (Engesser) than it was with Dorothy (Finley)."[1] Kinney disputed that Rensch had told him about Eckholm. He testified that he was not aware that Eckholm claimed to have seen a woman driving at the time of the accident until the State asked Rensch about Eckholm in the habeas hearing. Kinney testified that he was surprised when Eckholm's name came up during the habeas hearing.

[¶6.]     The testimony of Eckholm and Fowler became the centerpiece of Engesser's second habeas hearing. Eckholm testified that on the day of the

---

1.     On cross examination, Rensch further explained his concern about Eckholm's description of a blond-haired driver:
        Because during the summer, when I knew Mr. Engesser, he had longer bleach-blond hair that hung down. Dorothy Finley's hair was very dark in the photographs that I saw. And with the car going that speed, if you put a blond-haired person in the driver's seat, that doesn't help out Mr. Engesser.

accident, as he was parked on the shoulder of the highway, he heard tires squealing and looked up to see Finley's Corvette coming toward him. Eckholm testified that he saw the Corvette go by and then spin around. He claimed he saw a woman in the driver's seat frantically steering the car and a male passenger "hanging on." Eckholm described the woman driver as having blonde hair that was long "enough to fly in the wind" and "kind of puffy." He then saw the back end of the Corvette hit a minivan, the male passenger fly out of the passenger side of the Corvette as it flipped, and the Corvette crash into the median ditch. He walked to the Corvette and saw Finley underneath the overturned car. Eckholm's description placed Engesser's body further from the vehicle than Trooper Fox claimed at trial.

[¶7.] Fowler testified that she saw a man thrown from the Corvette after the collision. She ran to where he lay in the median and then went to check on the people in the van. Fowler also testified that she had noticed the red Corvette with a woman driver, earlier in the day.

[¶8.] The circuit court determined that Engesser had shown that his prior habeas counsel and trial counsel were ineffective because they had failed to identify and investigate Eckholm and Fowler and that he was prejudiced because their testimony would likely have altered the outcome of the original jury trial. Since Engesser had shown prejudice, the circuit court granted habeas corpus relief. The State appeals.

[¶9.] Before addressing the issues raised on appeal, we reiterate a petitioner's burden of proof when seeking a second or subsequent habeas based on ineffective assistance of counsel claims. In 2001, we held that the right to habeas

"counsel mandated by SDCL 21-27-4 makes it 'implicit that this means competent counsel.'" Jackson v. Weber, 2001 SD 30, ¶18, 637 NW2d 19, 23 (quoting Lozada v. Warden, 223 Conn 834, 839, 613 A2d 818, 822 (1992) (additional citations omitted)). Thus, we enabled a defendant to challenge the effectiveness of habeas counsel in a subsequent habeas application. Counsel's effectiveness is measured by the standard set forth in *Strickland v. Washington.* 466 US 668, 104 SCt 2052, 80 LEd2d 674 (1984). We said, "ineffective assistance of counsel at a prior habeas proceeding is not alone enough for relief in a later habeas action. Any new effort must eventually be directed to error in the original trial or plea of guilty." *Jackson*, 2001 SD 30, ¶17, 637 NW2d at 23. Even though the challenge must eventually show error in the underlying trial or plea, the habeas applicant must first show that the prior habeas counsel was ineffective. Perhaps, this step has not been emphasized enough in our prior cases.

[¶10.]     Consequently, for Engesser to prevail in this second habeas challenge, he must show that his first habeas counsel was ineffective. We do not believe he has made that showing. Most of the evidence was directed at trial counsel's omissions, not at habeas counsel's omissions. The circuit court found that habeas counsel was ineffective conceivably due to his failure to interview the witnesses and/or ask for a continuance when the names surfaced at the habeas hearing. "This Court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel." Baldridge v. Weber, 2008 SD 14, ¶21, 746 NW2d 12, 17 (citations omitted).

[¶11.]      Under *Strickland,* "the defendant must show that [habeas] counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 US at 688, 104 SCt at 2064, 80 LEd2d 674.

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 SCt at 2066. Thus, "the performance inquiry must be whether [habeas] counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 SCt at 2065.

[¶12.]      Habeas counsel's function is circumscribed by the relief sought as follows:

> The remedy of post-conviction habeas corpus is restricted by the provisions of SDCL 21-27-16 and the prior decisions of this court. The statutory provisions were fairly well summarized in our decision, *State v. Erickson,* 80 SD 639, 129 NW2d 712 (1964), wherein we pointed out that, since the remedy is in the nature of a collateral attack upon a final judgment, the scope of review in habeas corpus proceedings is limited. As we said: 'Habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.' *Id.,* 80 SD at 645, 129 NW2d at 715. *See also* Goodroad v. Solem, 406 NW2d 141 (SD 1987). Habeas

> corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional err[or]. *Id.,* 406 NW2d at 143; SDCL 21-27-16. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. *Goodroad,* 406 NW2d at 143; Podoll v. Solem, 408 NW2d 759 (SD 1987). . . .

Weiker v. Solem, 515 NW2d 827, 829-30 (SD 1994). The circuit court determined that Engesser's first habeas counsel was ineffective because he "fail[ed] to identify eyewitnesses Eric Eckholm and Charlotte Fowler in the prior habeas trial." Kinney testified that his strategy in the first habeas was to concentrate on Rensch's failure to object to Trooper Fox's testimony. He explained as follows: "I saw how the Supreme Court had commented on the failure to object, and I thought that was a very good starting point." He further explained his strategy in preparing the case was to study the record because in his view "the stronger case on habeas is always something that arises out of the record." Kinney also reviewed the discovery and then called trial attorney Rensch to ask what he had done, his thoughts and how the trial had gone. He characterized Rensch as very helpful. Rensch had given him names of witnesses to contact and was willing to testify about the mistakes Rensch had made at trial (as noted by this Court in the direct appeal). Kinney also communicated with Engesser on the issues that Engesser thought were important. Kinney was unable to recall if he had seen Trooper Fox's report that identified Eckholm as an eye witness. All the same, Kinney did raise the issue of failure to call defense witnesses in the habeas application.

[¶13.] Engesser claims that Kinney's representation was not reasonable under the circumstances because he failed to interview Eckholm and Fowler. Yet, he has not shown that Kinney's habeas representation fell below what a reasonable

habeas attorney would do under the circumstances. Kinney advanced several claims in the habeas application including ineffective assistance of counsel and three due process violations. He based the ineffective assistance of trial counsel on Engesser's failure to testify; failure to properly object to testimony, evidence, and final argument; failure to subpoena witnesses regarding Finley's driving habits; and the accumulation of all the alleged failures. Kinney testified that in hindsight tracking down the roadside witnesses would have been beneficial but "as a petitioner, you don't always have the opportunity to go out and redo the case." Even assuming that Rensch had told Kinney that Eckholm had contacted him about being able to identify the driver, Rensch's opinion was that Eckholm's identification was more inculpatory than it was exculpatory. The record supported Rensch's conclusion and Kinney's failure to follow up on Eckholm's questionable identification of the driver was not outside the range of professional competence. On the other hand, if Kinney was surprised by the name surfacing at the habeas hearing, failure to request a continuance was reasonable considering neither Kinney nor Engesser knew what Eckholm would say or if his testimony would help or harm the case. Without a showing of relevancy, it would have been unlikely that the court would have granted a continuance.

[¶14.] We do not judge an attorney's representation with hindsight advantage. As we have said:

> When reviewing counsel's performance, this court will not make a competency determination on the basis of hindsight. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of

counsel was unreasonable." Conaty v. Solem, 422 NW2d 102, 103 (1988) (*quoting Strickland,* 466 US at 689, 104 SCt at 2065). The function of this court is not to assume the role of a Monday morning quarterback. We will not "second-guess the tactical decisions of trial counsel, nor will we substitute our own theoretical judgment for that of the trial attorney." *Conaty,* 422 NW2d at 103; Woods v. Solem, 405 NW2d 59, 62 (SD 1987); State v. Dornbusch, 384 NW2d 682, 686-87 (SD 1986). Instead, this court in deciding an ineffectiveness of counsel claim will evaluate the reasonableness of counsel's representation "from counsel's perspective at the time of the alleged error and in light of all circumstances." Waff v. Solem, 427 NW2d 118, 121 (1988) (*quoting* Kimmelman v. Morrison, 477 US 365, 381, 106 SCt 2574, 2586, 91 LEd2d 305 (1986)); Luna v. Solem, 411 NW2d 656, 658 (1987) (*quoting Kimmelman, supra* ). The ultimate test of whether trial counsel was ineffective is whether under the entire record and totality of the circumstances, counsel's performance was within the range of normal competency.

Aliberti v. Solem, 428 NW2d 638, 641 (SD 1988).

[¶15.] We hold that based on the entire record and totality of the circumstances, Engesser's habeas counsel's performance was within the range of normal professional competency. Since Engesser has failed to show ineffective assistance of habeas counsel, we need not address the other issues raised by the State.

[¶16.] Reversed.

[¶17.] SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶18.] GILBERTSON, Chief Justice, concurs in result.


GILBERTSON, Chief Justice (concurring in result).

[¶19.] I would reverse the decision of the habeas trial court for the reasons set forth in my dissent in *Jackson v. Weber*, 2001 SD 30, 637 NW2d 19.